UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

UNITED STATES OF AMERICA for the use and benefit of FIVE STAR ELECTRIC CORP.,

Plaintiff,

-v-

No. 15 CV 4961-LTS

LIBERTY MUTUAL INS. CO. and CAULDWELL-WINGATE CO., LLC,

Defendants.

------------------------------------------------------------ x

MEMORANDUM OPINION AND ORDER

Plaintiff Five Star Electric Corp. ("Five Star"), a subcontractor of defendant Cauldwell-Wingate Co., LLC ("Cauldwell") for a construction project at the Thurgood Marshall United States Courthouse in Manhattan (the "Project"), brings this suit under the Miller Act, 40 U.S.C. § 3133, and for breach of contract and quantum meruit. This Court has subject matter jurisdiction of the Miller Act claim pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction of the state-law claims pursuant to 28 U.S.C. § 1367.

On November 1, 2016, this Court granted a motion to dismiss by Cauldwell and Liberty Mutual Insurance Company ("Liberty Mutual" and, with Cauldwell, "Defendants"), and dismissed Five Star's original complaint (docket entry no. 1, "Complaint") for failure to state a claim, with leave to replead (docket entry no. 57, "November Opinion"). Five Star now moves for leave to file a proposed Amended Complaint (docket entry no. 63, Decl. of Matthew Minero, Ex. B., the "AC"). This Court has carefully considered the parties' submissions and, for the reasons that follow, Five Star's motion for leave to amend is denied as futile.

## BACKGROUND

The Court assumes the parties' familiarity with the allegations in the Complaint, as detailed in the November Opinion. All abbreviations used herein have the same meaning as in the November Opinion.

The proposed AC repeats all the allegations and claims in the Complaint (see AC ¶¶ 1-11, 36-55), and adds a new breach of contract claim for underpayment based on additional work requested by Cauldwell under the subcontract (the "Changes") (id. ¶¶ 32-35). The proposed AC also contains new factual allegations relating to the second breach of contract claim, alleging delays and inefficiencies in the Project caused by Cauldwell. (Id. ¶¶ 12-31.)

On the first breach of contract claim based on underpayment, the proposed AC alleges that Five Star and Cauldwell entered into a subcontract for construction work at the Project (the "Subcontract") for a specified price of $43,100,000.00. (Id. ¶ 8.) The proposed AC further alleges that Five Star performed additional work under the Changes as required by Cauldwell (id. ¶ 9), with the total price of the Subcontract and the Changes amounting to a sum of $56,576,658.69 (id. ¶ 33). The proposed AC contains no factual allegations about the nature of the Changes, except for stating the man hours allegedly spent performing the Changes. (Id. ¶ 19.) Five Star alleges that it has been paid $55,899,500.64 for the work it performed (id. ¶ 31), and seeks the difference of $667,158.05 between the payment it received and the alleged total price in monetary damages against Cauldwell (id. ¶ 35).

On the second breach of contract claim based on delays caused by Cauldwell, the proposed AC alleges that Cauldwell failed to timely coordinate the work of its subcontractors, imposed unanticipated changes in the design and sequencing of contractual work, and failed to timely respond to Five Star's requests for information. (Id. ¶¶ 14-18.) Such failure allegedly

caused delays in Five Star's work on the Project, resulting in damages in the form of labor inefficiency costs and extended general condition costs. (Id. ¶¶ 42-43.) While Five Star did not attach the Subcontract to either its Complaint or the proposed AC, a copy of "Subcontract Agreement", together with an attachment entitled "Subcontract Terms & Conditions", was filed by Cauldwell with its memorandum of law in opposition to Five Star's motion for leave to amend. (Docket entry no. 65., Decl. of Michael T. Contos, Ex. 1.) § 5.0 of the "Subcontract Terms & Conditions" provides as follows:

> [I]n the event SUBCONTRACTOR is delayed in performing any of its obligations under this SUBCONTRACT, and such delay is caused by ... or by acts or omissions of CONTRACTOR, OWNER or others, such delays shall be excused and the period thereof shall be added to the time for performance of the obligation delayed. Said time extension(s) shall constitute SUBCONTRACTOR's sole and exclusive remedy with respect to such delay(s), and SUBCONTRACTOR shall not be entitled to additional compensation as a result of such delays.

(Id. at ECF p. 9.) Five Star alleges that the costs incurred due to the delays amount to a sum of $22,136,009.00, and seeks this amount in compensatory damages against Cauldwell. (Id. ¶ 42.)

In the proposed AC, Five Star relies on the same factual allegations underlying the two breach of contract claims to raise a quantum meruit claim, seeking $22,813,167.95 in monetary damages as the alleged fair and reasonable value of work performed. (Id. ¶¶ 47-48.) As the fourth and last cause of action, Five Star alleges that the Subcontract was entered into as part of a government construction project, and that a payment bond was posted by Liberty Mutual as a surety for the payment to subcontractors and material suppliers, pursuant to requirement of the Miller Act, 40 U.S.C. § 3131. (Id. ¶¶ 7, 50.) Invoking the payment bond-based cause of action established by 40 U.S.C. § 3133, and relying on the factual allegations underlying the two breach of contract claims, Five Star alleges that it was underpaid under the

Subcontract and seeks the sum of $22,813,167.05 in monetary damages.

## DISCUSSION

Federal Rule of Civil Procedure 15 provides that the court may give leave to a party to amend its pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). A proposed amendment to a pleading may be denied on grounds of futility, however, "if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted). The party opposing the motion to amend bears the burden of establishing that the amendment would be futile. Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sep. 19, 2008).

Under the standard of Rule 12(b)(6), the Court accepts as true the non-conclusory factual allegations in the complaint, and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). A pleading that only offers "labels and conclusions or a formulaic recitation of elements of a cause of action" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In ruling on a motion under Rule 12(b)(6), the court may consider the facts as asserted within the four corners of the pleading, together with the documents attached to it as exhibits, any documents incorporated in it by reference, see Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010), and documents upon which the pleading relied and which are integral to the pleading, see Subaru Distribs. Corp. v. Subaru of Am, Inc., 425 F.3d 119, 122 (2d Cir. 2005). In most instances where the material is recognized as integral,

the material is a contract or other legal document containing obligations upon which the non-moving party's claim stands or falls, but was not attached to the pleading. Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006).

Count One: Breach of Contract Based on Underpayment

To make out a viable claim for breach of contract under New York law, Five Star must allege facts that plausibly plead (1) the formation of a contract between the parties, (2) adequate performance of the contract by one party, (3) breach of contract by the other party, and (4) damages. See Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (citation omitted). Here, the breach of contract claim based on underpayment fails because Five Star has failed to sufficiently plead the occurrence of a breach and resulting damages.

The proposed AC states that Five Star and Cauldwell entered into the Subcontract for a specified sum of $43,100,000.00, and that Five Star has been paid $55,899,500.64, a sum well above the agreed contract price. The proposed AC also alleges that Five Star performed additional work under the Changes pursuant to the requirement of Cauldwell, and asserts that the total price of the Subcontract and the Changes amounts to a sum of $56,576,658.69. Thus, the price for the work performed under the Changes allegedly amounts to $13,476,658.69, the difference between the alleged total price and the Subcontract price.

Five Star, however, makes no allegations about the nature or content of the work allegedly performed under the Changes, and provides no basis to determine the price of such work, apart from one allegation of the approximate man hours spent in completing the Changes. Without any allegations regarding how the parties value the work performed under the Changes, or how Five Star calculates the price of its work based on man hours, the general assertions in

the proposed AC are insufficient to raise a plausible inference that the proper price for the Changes amounts to more than $13 million, or that such sum is more than the payment amount that Five Star has already received above the original Subcontract price. Granting leave to add Five Star's breach of contract claim based on underpayment as framed in the proposed AC would be futile, and leave to make the proposed amendment is therefore denied.

Count Two: Breach of Contract Based on Delays

In its proposed AC, Five Star alleges that Cauldwell caused various delays in the progress and scheduling of the work on the Project resulting in Five Star's damages, and provides a list of examples in the form of proposed change orders submitted by Five Star to Cauldwell, seeking indemnification. (AC ¶¶ 22-28.)

Since the Subcontract between Five Star and Cauldwell forms the basis of Five Star's breach of contract claims, the Subcontract is a document integral to the proposed AC, which this Court can properly consider on a motion to dismiss. See Global Network Commc'ns, Inc., 458 F.3d at 157. Here, § 5.0 of the "Subcontract Terms & Conditions", which is annexed to the "Subcontractor Agreement" and is quoted above, provides that any delays caused by Cauldwell in Five Star's work at the Project shall be excused, and that time extension for the performance of the Subcontract shall constitute Five Star's sole and exclusive remedy. Five Star's claim for monetary damages for delays caused by Cauldwell falls under this clause.

Under New York law, no-damage-for-delay clauses are not against public policy and are generally enforceable, unless: (1) delays are caused by the contractee's bad faith or its willful, malicious, or grossly negligent conduct; (2) delays are uncontemplated; (3) delays result from the contractee's breach of a fundamental obligation of the contract; or (4) delays are so

unreasonable that they constitute an intentional abandonment of the contract by the contractee. U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Consti. Corp., 95 F.3d 153, 166 (2d Cir. 1996). The proposed AC asserts that the first three exceptions apply here, but merely recites the language of the standard, without providing any underlying factual allegations that would plausibly demonstrate that any of the exceptions apply here. (See AC ¶¶ 39-41.) The Court will not accept as true a legal conclusion couched as a factual conclusion, and such "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a plausible cause of action. Iqbal, 556 U.S. at 678 (2009). Therefore, granting leave to make the proffered amendment of Five Star's breach of contract claim based on delays caused by Claudwell as proposed would be futile, and leave to amend is denied.

Count Three: Quantum Meruit

Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual in nature, and alternative claims under a theory of quantum meruit are precluded. Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 449 F. App'x 57, 59 (2d Cir. 2001). Courts will permit pleading in the alternative in the face of a written agreement only when there is a bona fide dispute as to the agreement's validity, or where the agreement does not cover the dispute at issue. Id.; see also Air Atl. Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 195-96 (S.D.N.Y. 2009). Here, in the proposed AC, Five Star neither disputes the validity of the Subcontract nor alleges that the Subcontract is silent as to the subject matter of its breach of contract claims. (See AC ¶¶ 7-31.) Therefore, granting leave to make the proffered amendment to Five Star's quantum meruit claim would be futile, and leave to amend is denied.

Count Four: Miller Act

"[T]o make out a Miller Act claim and avoid a futility finding," Five Star must plead that "(1) it provided labor or materials in performing work provided for in a contract for which a payment bond is furnished and (2) it has not been paid in full for the work performed." M.E.S., Inc. v. Safeco Ins. Co. of Am., No. 10 CV 02798, 2014 WL 2931398, at *4 (E.D.N.Y. Jun. 27, 2014); see also Empire Enters. JKB, Inc. v. Union City Contractors, Inc., 660 F.Supp.2d 492, 507 (W.D.N.Y. 2009). Because Five Star can not plausibly state a claim of underpayment in either breach of contract or quantum meruit, it cannot sufficiently plead that it was underpaid for its work under the Subcontract and the Changes. Therefore, granting leave to amend the cause of action asserting a claim under the Miller Act would be futile, and leave to amend is denied.

## CONCLUSION

For the foregoing reasons, Five Star's motion for leave to file the proposed amended complaint is denied as futile. This Memorandum Opinion and Order resolves docket entry no. 62.

The Clerk of the Court is directed to enter judgment dismissing the Complaint with prejudice, and close this case.

SO ORDERED.

Dated: New York, New York
August 28, 2017

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge