USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/19/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                                :

UNITED STATES OF AMERICA for         :
the use and benefit of FIVE STAR       :
ELECTRIC CORP.,                   :

                                             :           **OPINION AND ORDER**
                              Plaintiff,    :
         -v-                        :           15-CV-4961 (LTS) (JLC)
                                               :

LIBERTY MUTUAL INSURANCE CO.    :
and CAULDWELL-WINGATE CO., LLC,  :
                                             :
                              Defendants.  :
----------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

       In this contract dispute involving a federal construction project, Plaintiff Five

Star Electric Corporation moves for leave to serve a second amended complaint.  Its

proposed pleading increases the amount of damages sought for its breach of contract

and payment bond claims and asserts additional claims for further unpaid work and

for breach of implied covenant of good faith and fair dealing.  Defendants

Cauldwell-Wingate Company LLC and Liberty Mutual Insurance Company oppose

the motion.  For the reasons stated below, Five Star's motion is denied.[1]

---

[1] As an initial matter, having been referred this case for general pretrial
supervision, I have "the authority to decide plaintiff's [motion for leave] to amend
pursuant to 28 U.S.C. § 636(b)(1)(A)." *Corrado v. N.Y. State Unified Court Sys.*, No.
12-CV-1748 (DLI) (MDG), 2014 WL 4626234, at *1, n.1 (E.D.N.Y. Sept. 15, 2014)
(collecting cases).  A denial of a motion to amend by a magistrate judge is "treated
as a nondispositive matter . . . regardless of whether the denial foreclose[s] potential
claims." *MPI Tech A/S v. Int'l Bus. Machines Corp.*, No. 15-CV-4891 (LGS) (DCF),
2017 WL 481444, at *3 (S.D.N.Y. Feb. 6, 2017) (*citing Fielding v. Tollaksen*, 510
F.3d 175, 178 (2d Cir. 2007)).

# I. BACKGROUND

The factual background and procedural history in this case are set out more fully in the November 1, 2016, August 28, 2017, and April 19, 2018 decisions from Judge Swain and the December 18, 2018 summary order issued by the United States Court of Appeals for the Second Circuit, and familiarity with those decisions is assumed. *See United States for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, No. 15-CV-4961 (LTS), 2016 WL 6464481 (S.D.N.Y. Nov. 1, 2016); 2017 WL 3724096 (Aug. 28, 2017); and 2018 WL 10456415 (Apr. 19, 2018); *United States for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 758 F. App'x 97 (2d Cir. 2018).

In short, Defendant Cauldwell-Wingate Co., LLC ("Cauldwell") as general contractor subcontracted with Plaintiff Five Star Electric Corp. ("Five Star") in 2009 for a construction project at the Thurgood Marshall United States Courthouse in Manhattan.  Proposed Second Amended Complaint ("SAC"), Dkt. No. 112-A, ¶¶ 1, 7–8.  In connection with this project, Defendant Liberty Mutual Insurance Company ("Liberty") issued a payment bond to the General Services Administration ("GSA") on behalf of Cauldwell.  *Id.* ¶ 81.  Five Star alleges that, at Cauldwell's request, it performed work outside of the subcontract for which it has not been compensated by Cauldwell.  *Id.* ¶¶ 9–19.  Pursuant to the SAC, Five Star now seeks to include work associated with a change order for which Five Star was unable to bill Cauldwell in the full amount, in addition to work performed outside of that change order.  *Id.* ¶¶ 16–33.  Five Star also includes allegations in the SAC that Cauldwell "refused" to

negotiate an agreement in good faith that would have entitled Five Star to recover balances owed to it by GSA. *Id.* ¶¶ 70–79.

On June 26, 2015, Five Star filed its original complaint alleging claims against Cauldwell and Liberty based on the Miller Act, breach of contract, and *quantum meruit.* Dkt. No. 8. Defendants originally moved to dismiss on October 23, 2015, Dkt. Nos. 28–30, and renewed their motion on November 30, 2015, Dkt. Nos. 40–42. On November 1, 2016, Judge Swain concluded that Five Star's allegations that Cauldwell owed it an additional $20 million were "premised on no facts whatsoever," and granted the motion, but permitted Five Star to move for leave to amend its complaint. *Five Star*, 2016 WL 6464481, at *2.

On January 1, 2017, Five Star moved for leave to file an amended complaint, alleging that $677,158.05 remained due from Cauldwell for breach of contract, and further seeking to recover $22,136,009.00 for costs incurred as a result of Cauldwell's alleged delays and inefficiencies. Proposed Amended Complaint dated November 30, 2016, Dkt No. 63-B ¶¶ 35, 42. The court denied Five Star's motion for leave to amend as futile on August 28, 2017. *Five Star*, 2016 WL 6464481, at *2. In particular, the court concluded that Five Star had failed to plead facts sufficient to raise a plausible inference as to the breach of contract claim. *Id.* at 5–6. The court also reasoned that Five Star was foreclosed from collecting any monetary damages as a result of delays by the terms and conditions of the subcontract, which excused Cauldwell from financial liability for delays it caused in connection with Five Star's work, with the sole remedy being time extension. *Id.* at 6. Five Star

moved for reconsideration, but its motion was denied on April 19, 2018.  Dkt. Nos.
70–71, 75.  Five Star then appealed the August 28, 2017 and April 19, 2018 orders
to the Court of Appeals.  Dkt. No. 76.

On December 18, 2018, the Second Circuit vacated the district court's holding
that Five Star failed to plausibly allege a breach of contract claim for underpayment
in the amount of $677,158.05, affirmed the denial of leave to amend as to all other
claims, and remanded for further proceedings.  *Five Star*, 758 F. App'x at 100.
Notably, the Second Circuit held that Five Star plausibly alleged a claim for
$677,158.05 because it submitted change orders "agreed to by [Cauldwell] and
performed by Five Star" that had not been paid.  *Id.* at 99.  In affirming the
dismissal of Five Star's additional work claim, the Second Circuit agreed with
Judge Swain's analysis of the no-damages-for-delay clause and further reasoned
that Five Star submitted only *proposed* change orders, but failed to allege "that
[Cauldwell] ever approved or accepted these proposed change orders."  *Id.* at 100.
Therefore, the Second Circuit concluded that Five Star had "not identified a
meeting of the minds on what or how it was to be paid for work beyond that
originally contemplated by the subcontract and the change orders," and was
deficient in its explanation of the "contractual basis for the alleged shortage . . . ."
*Id.*

In light of the Second Circuit's mandate, Judge Swain granted Five Star
leave to file an amended complaint asserting a breach of contract claim for the
underpayment of $677,158.05 and referred this case to me for general pre-trial

supervision.  Order dated March 15, 2019, Dkt. No. 80.  Five Star filed an amended complaint on April 23, 2019 to that end, which Defendants answered on June 3, 2019.  Dkt. Nos. 94–98.  On September 13, 2019, following an unsuccessful settlement conference, Five Star moved for leave to serve a second amended complaint.  Dkt. Nos. 111–13.  In addition to increased damages amounts for its claims of breach of contract and payment bond, the SAC includes additional claims for unpaid extra work and for breach of implied covenant of good faith and fair dealing.  SAC ¶¶ 20–86.  Defendants filed their opposition papers on December 16, 2019.  Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Serve a "Second Amended Complaint" ("Def. Mem.") dated December 16, 2019, Dkt. No. 117.  Five Star filed its reply on January 6, 2020.  Plaintiff's Reply Memorandum of Law in Further Support of Motion for Leave to Serve Second Amended Complaint ("Pl. Reply") dated January 1, 2020, Dkt. No, 118.

## II.  DISCUSSION

### A.  Legal Standards

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court should freely grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Notwithstanding this standard, it is within a court's discretion to "deny leave [to amend] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis,* 317 U.S. 178, 182 (1962)).  An amendment is deemed futile if the allegations in the complaint would not survive a

5

motion to dismiss, *Hayes v. L3 Commc'ns Holdings, Inc.*, No. 07-CV-1853 (PKC), 2007 WL 4103824, at *1 (S.D.N.Y. Nov. 9, 2007) (citing *Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003)), or if the plaintiff "seeks a remedy which [the] Court has no authority to grant," such as a claim that is "barred by either *res judicata*, judicial immunity, statute of limitations, [or] the law-of-the-case doctrine[.]" *Gleis v. Buehler*, No. 3:11-CV-663 (VLB), 2012 WL 1194987, at *8 (D. Conn. Apr. 10, 2012). "The party opposing a motion to amend bears the burden of establishing that an amendment would be futile." *Ballard v. Parkstone Energy, LLC*, No. 06-CV-13099 (RWS), 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008).

When considering a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of a plaintiff. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015) (citing *Ofori-Tenkorang v. Am. Int'l Grp., Inc.,* 460 F.3d 296, 300 (2d Cir. 2006)). To survive a Rule 12(b)(6) motion, a plaintiff must plead facts in his complaint that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when there exists "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "A complaint need not include 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *JCG v. Ercole*, No. 11-CV-6844 (CM) (JLC), 2014 WL 1630815, at *5 (S.D.N.Y. Apr. 24, 2014) (quoting

*Iqbal*, 556 U.S. at 678) (internal quotations omitted), *adopted by* 2014 WL 2769120 (June 18, 2014). A complaint containing only "conclusory allegations or legal conclusions masquerading as factual conclusions" will not survive a motion to dismiss. *Womack v. Capital Stack, LLC*, No. 18-CV-4192 (ALC), 2019 WL 4142740, at *3 (S.D.N.Y. Aug. 30, 2019) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

In the context of a Rule 12(b)(6) motion, a court "may permissibly consider documents other than the complaint . . . [including d]ocuments that are attached to the complaint or incorporated in it by reference," or those which are "integral" to the pleadings. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). To be considered "integral," a plaintiff must have relied "on the terms and effect of [that] document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## B. The Amended Breach of Contract Claim Is Barred by the Law of the Case Doctrine

In the SAC, Five Star alleges that Cauldwell owes the sum certain of $814,423.20 for breach of contract. SAC ¶ 23. This amount is $137,265.15 more than the $677,158.05 figure as to which the Second Circuit determined that Five

Star sufficiently pled, and as to which Judge Swain granted Five Star leave to file an amended complaint. *Five Star*, 758 F. App'x at 99; Dkt. No. 80 ("Plaintiff Five Star Electric Corp. is hereby granted leave to file an amended complaint asserting a breach of contract claim for the underpayment of $677,158.05.").

Five Star argues that the difference of $137,265.15 reflects monies to which it is entitled, but for which it was prohibited from billing to Cauldwell. SAC ¶¶ 16–19. Specifically, Five Star contends that the work it performed pursuant to the subcontract and change orders had a value of $56,713,923.84, but it was only able to bill Cauldwell for $56,576,658.69 because Cauldwell did not agree to the higher requisition value that Five Star had wanted to use in its calculations. *Id.* ¶¶ 16–17. In fact, according to Five Star, Cauldwell "threatened to impose back charges to Five Star if Five Star wanted to bill the final $137,265.15." *Id.* ¶ 18.

Defendants argue that Five Star's enlarged breach of contract claim is barred by *res judicata,* the law of the case doctrine, and Rules 59 and 60 of the Federal Rules of Civil Procedure. Def. Mem at 3–6. They base their arguments on the Second Circuit's summary order, which held that Five Star sufficiently alleged a breach of contract claim for the underpayment of $677,158.05, but failed to state a plausible claim as to $19,694,447 in damages for labor and general extension costs. *Id.* at 3 (citing *Five Star*, 758 F. App'x at 99–101).

"Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action.'" *Maersk, Inc. v. Neewra,*

8

*Inc.*, 554 F. Supp. 2d 424, 465 (S.D.N.Y. 2008) (quoting *EDP Med. Computer Sys.,
Inc. v. U.S.*, 480 F.3d 621, 624 (2d Cir. 2007)).  *Res judicata* bars subsequent
litigation where an "earlier decision was (1) a final judgment on the merits, (2) by a
court of competent jurisdiction, (3) in a case involving the same parties or their
privies, and (4) involving the same cause of action."  *Id.* (quoting *EDP*, 480 F.3d at
624); *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir.
2000)).  The principle of "finality" in this context is "generally the same as that
required for appealability under the final judgment rule," that is, characterized by
"completion of all steps of adjudication of the claim by the court."  *O'Diah v. New
York City*, No. 02-CIV-274 (DLC), 2002 WL 1941179, at *4 (S.D.N.Y. Aug. 21, 2002)
(citing Restatement (Second) of the Law of Judgments).  Although the Second
Circuit has affirmed a district court's dismissal on *res judicata* grounds of an
amended complaint after an entry of summary judgment, *see L-Tec Elecs. Corp. v.
Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir. 1999), the doctrine typically "does
not speak to direct attacks in the same case, but rather has application in
subsequent actions."  *Tomasino v. Estee Lauder Companies, Inc.,* No. 13-CV-4692
(ERK), 2015 WL 1470177, at *1 (E.D.N.Y. Mar. 31, 2015) (citing *Rezzonico v. H & R
Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999)).[2]

---

[2] *See also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal
Practice and Procedure: Jurisdiction* § 4434 at 130 (2d ed. 2002) ("Preclusion should
not apply within the framework of a continuing action"), n.34 ("The doctrine of
finality has been expanded to base preclusion even on partial summary judgment,
but the purpose is to cut off the right to litigate the same issue in two separate
actions.  Within the limits of a single case, law-of-the-case doctrine, not preclusion,

Where, as here, an issue has been expressly or impliedly resolved in a previous stage of the same case, the law of the case doctrine is the appropriate vehicle for analysis. *See, e.g., Manolis v. Brecher*, 634 F. App'x 337, 338 (2d Cir. 2016) ("[T]he law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings in the same case.") (citing *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007)) (internal citations omitted).  The doctrine "counsels against revisiting . . . prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Thorn*, 446 F.3d 378, 383 (2d Cir. 2006) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).  "The law of the case doctrine is 'driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality.'" *Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15-CV-8974 (LGS), 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) (citing *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009)).

One branch of the law of the case doctrine, the so-called mandate rule, "prevents re-litigation in the district court" of any matter "expressly decided" or "impliedly resolved by the appellate court's mandate." *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) (quoting *Yick Man Mui v. United States*, 614 F.3d

---

is the source of whatever limits may apply to reconsideration of an earlier summary judgment ruling.") (citing *Williams v. C.I.R.*, 1 F.3d 502, 504 (7th Cir. 1993)).

50, 53 (2d Cir. 2010)) (internal quotations omitted).  Moreover, "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues . . . ." *Manolis*, 634 F. App'x at 338 (citing *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) (internal quotations omitted)).

The law of the case doctrine applies here, where Five Star moves for leave to amend its complaint following the Second Circuit's ruling partially affirming and partially vacating the district court's judgment.  The appellate court remanded with "instructions for the district court to grant Five Star leave to file the Complaint" to the extent that the "agreed-upon changes," as evidenced by the change orders, showed a deficiency of $677,158.05.  *Five Star,* 758 F. App'x at 99–100.  The Second Circuit identified the agreed-upon change orders as critical documents to Five Star's breach of contract claim, as they demonstrated a "meeting of the minds" between the two parties.  *Five Star,* 758 F. App'x at 99.  For all claims asserting damages beyond $677,158.05, the Second Circuit observed a clear lack of a meeting of the minds in affirming the district court's denial of leave to amend.  *Id.* at 100.

In the SAC, Five Star seeks to revise its breach of contract claim based not upon a meeting of the minds, but rather with a figure that was explicitly beyond that to which Cauldwell agreed.  SAC ¶ 17.  As such, the claim mirrors those resolved by the Second Circuit's mandate, and are thus barred by the law of the case doctrine.  *See, e.g., NECA–IBEW Health & Welfare Fund v. Goldman, Sachs &*

11

*Co.*, No. 08-CV-10783 (MGC), 2015 WL 72576, at *2 (S.D.N.Y. Jan. 6, 2015)

(denying leave to revive dismissed claims by amendment where Second Circuit

"affirmed dismissal of [those claims], and, by implication, decided that [those

claims] should not be repled").

　　　　To overcome preclusion under the mandate rule, Five Star must demonstrate

a "cogent" or "compelling" reason why it should not be bound by the Second Circuit's

decision.  *See, e.g., United States v. Argentina*, 267 F. App'x 31, 32 (2d Cir. 2008)

("There is, however, an exception to the mandate rule for 'cogent' and 'compelling'

reasons such as ... 'the availability of new evidence.'") (quoting *United States v.*

*Quintieri,* 306 F.3d 1217, 1230 (2d Cir. 2002)).  In its submissions in support of its

motion, however, it has failed to offer any persuasive rationale why it is not bound

by the Circuit's decision or explain why it took until 2019 to identify this additional

purported deficiency.  *See* Pl. Mem. at 4–8; Pl. Reply at 7–8.  Instead, Five Star

argues only that the law of the case doctrine is discretionary, rather than binding.

Pl. Reply at 7–8 (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).  Yet the

mandate rule, as a narrower branch of the law of the case doctrine, "is not so

discretionary."  *Frank K. v. Comm'r of Soc. Sec.*, 371 F. Supp. 3d 163, 172 (D. Vt.

2019) (citing *United States v. Sawyer*, 907 F.3d 121, 125 (2d Cir. 2018) ("The

mandate rule, a component of the law of the case doctrine, requires district courts to

comply with our holdings regarding that case.")).

　　　　Furthermore, even if the application of the law of the case doctrine in this

instance were discretionary, denying leave to amend is appropriate in cases where,

12

as here, Five Star has now had five opportunities to replead its case, and the

"benefit of specific warnings as to [its] complaints' deficiencies." *Parker v. DeBuono*,

No. 98-CV-5765 (NRB), 2000 WL 223841, at *2 (S.D.N.Y. Feb. 25, 2000), *aff'd sub*

*nom. Parker v. Com'r DeBuono*, 242 F.3d 366 (2d Cir. 2000).[3]  Because the Second

Circuit's mandate is the law of the case with respect to the breach of contract claim,

and Five Star has not presented any valid reason, such as a change in the law or

the emergence of new evidence, to justify divergence therefrom, leave to amend the

breach of contract claim is denied.[4]

### C. The Extra Work Claim Is Also Barred by the Law of the Case Doctrine

The extra work claim in the SAC covers work performed outside of the scope

of the subcontract or the change orders, the net worth of which allegedly totals

$3,683,230.68.  SAC ¶¶ 24–29.  The SAC includes an itemized list of the charges

that Five Star contends memorializes this extra work, presented according to

proposed change order number.  SAC ¶ 28.  An identical list was reviewed by Judge

Swain and the Second Circuit in connection with Five Star's now-dismissed claim

for damages caused by delays and inefficiencies.  *See* Dkt. No. 63, Exh. B ¶¶ 22

("Five Star submitted certain portions of the additional labor costs resulting from

the inefficiencies in the work to [Cauldwell] by way of the following proposed change

---

[3] Five Star had "essentially had three bites at the apple" before its complaint
reached the Second Circuit, *Five Star*, 758 F. App'x at 101, and now two additional
opportunities to amend the complaint following remand.

[4] Given its reliance on the law of the case doctrine, the Court does not reach
Defendants' arguments predicated on Rules 59 and 60.

orders . . . ." ), 36–44.  Judge Swain denied leave to amend that claim on the basis

that the no-damage-for-delay clause in the contract provided no monetary remedy

for delays caused by Cauldwell.  *Five Star*, 2017 WL 3724096, at *3.  As noted, the

Second Circuit affirmed this denial based not only on the no-damage-for-delay

clause, but also on the fact that, by submitting only "*proposed* change orders" Five

Star had failed to "identif[y] a meeting of the minds on what or how it was to be

paid for work beyond that originally contemplated by the subcontract and the

change orders . . . ."  *Five Star*, 758 F. App'x at 100.

          In an apparent attempt to distinguish the extra work claim from the previous

claim based on delays and inefficiencies, Five Star alleges that "[t]he Extra Work

items were not delay related or constitute claims for additional costs due to delays

experienced by Five Star at the Project."  SAC ¶ 30.  Contrary to this assertion,

however, the extra work claim is not a "new claim," Pl. Mem. at 3, but rather a

repackaging of the proposed change orders that were rejected previously.  *Compare*

SAC ¶ 28 *with* Dkt. No. 63-B ¶ 22.  Moreover, the fatal flaw identified by the Second

Circuit in its December 2018 examination of the claim based on delays and

inefficiencies—the lack of a meeting of the minds—exists with respect to the SAC's

extra work claim as well.  *See* SAC ¶ 20 ("[Cauldwell] disputed, refused, and/or

failed to issue change orders for this Extra Work.").  As effectively a subset of the

delay/inefficiency damages claim previously adjudicated and rejected, the extra

work claim is therefore barred by the law of the case doctrine as well.

Five Star offers no compelling reasons as to why the law of the case doctrine should not apply to the extra work claim.  Rather, perhaps in response to the Second Circuit's conclusion that it did not "explain[] the contractual basis for the alleged shortage" demonstrated by the proposed change orders, *Five Star*, 758 F. App'x at 100, Five Star now argues that its purchase order with Cauldwell reveals a mutual understanding that Five Star may be "required to perform work that it believed was beyond what was called for in the Subcontract."  Pl. Mem. at 5.[5]  The purchase order is not new evidence, however, as it was included as an exhibit to Defendants' January 13, 2017 opposition to Five Star's prior motion to amend.  Dkt. No. 65, Exh. 2.

Additionally, given that Judge Swain and the Second Circuit already reviewed Five Star's claims based on proposed change orders, its argument concerning the purchase order could have been presented and decided upon in connection with those claims.  Pl. Mem at 7.  Thus, "[t]o the extent that [Five Star] suggests that any of [its] present [arguments for breach of contract based on extra

---

[5] Provision seven of the purchase order states:

> SUBCONTRACTOR shall give CONTRACTOR written notice within seven (7) calendar days after the happening of any event which the SUBCONTRACTOR believes may give rise to a claim by SUBCONTRACTOR for (i) an increase in the SUBCONTRACT price or (ii) additional time for performance.  SUBCONTRACTOR shall continue performance of the Work during the time any claim by SUBCONTRACTOR hereunder is pending.  The CONTRACTOR shall not be bound to any adjustments in the SUBCONTRACT price or schedule unless expressly agreed to by CONTRACTOR in writing.

Dkt. No. 65, Exh. 2.

work] were not made in [its] prior appeal, those challenges have been waived."
*Lightfoot v. Union Carbide Corp.*, 175 F.3d 1008, at *1 (2d Cir. 1999) (citing *County of Suffolk v. Stone & Webster Engineering Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) (decision made at previous stage of litigation, which could have been challenged in ensuing appeal but was not, becomes law of the case)).[6]  Offering a new explanation for the basis of the unpaid work at this stage of the proceedings does not cure the defect previously identified by the district and circuit courts.  *See In re Actos End-Payor Antitrust Litig.*, No. 13-CV-9244 (RA), 2018 WL 840099, at *4 (S.D.N.Y. Feb. 12, 2018) (mandate rule precluded proposed amendment in which plaintiffs alleged "different ways" to establish same theory of liability that Second Circuit previously rejected).  Accordingly, granting leave to amend the complaint to add the extra work claim would be futile, and the request to do so is denied.

## D. The Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Is Not Cognizable

Five Star's claim for breach of implied covenant of good faith and fair dealing concerns subcontract work that was allegedly completed nearly three years late due to "delays and inefficiencies not caused by Five Star."  SAC ¶¶ 35–36.  As a result of several issues including, *inter alia,* Defendants' failure to respond to information requests, Five Star alleges that it incurred extended general conditions costs totaling $5,521,760.15 (after markups of 10% for profit, 10% for overhead, and 1.85% for additional bond premium).  *Id.* ¶¶ 40–44.  Rather than compensate Five

---

[6] Five Star argues, without citation to any authority, that the law of the case doctrine "does not foreclose [it] from more clearly stating the basis of its extra work claim and to satisfy the [applicable] pleading standard."  Pl. Reply at 2.

Star directly, Cauldwell allegedly advised Five Star that it would present a claim for those costs, among others, to GSA. *Id.* ¶¶ 45–57.  However, under the *Severin* doctrine, Cauldwell (as general contractor) was not entitled to sue GSA on behalf of Five Star (as subcontractor) without an agreement ensuring Cauldwell was itself liable to Five Star. *Id.* ¶¶ 67–69.  According to the SAC, Five Star and Cauldwell did not enter into any such agreement because Cauldwell's proposed liquidating agreement would have "forced [Five Star] to waive all of its claims [against Cauldwell] other than its claim for extended general conditions." *Id.* ¶¶ 63–67.  Upon rejecting Cauldwell's proposed liquidating agreement, Five Star was foreclosed from collecting from GSA.

Five Star alleges that Cauldwell's "refus[al] to negotiate a formal written liquidating agreement in good faith," constituted a breach of the implied covenant of good faith and fear dealing. *Id.* ¶¶ 70–73.  By attaching to the proposed liquidating agreement the requirement that it abandon all other claims against Cauldwell, Five Star argues that Cauldwell "prevented Five Star from having its general conditions claim compensated by the GSA." *Id.* ¶¶ 76–78.

Defendants argue that Five Star's claim for breach of implied covenant of good faith and fair dealing is also barred by *res judicata,* the law of the case doctrine, and the *Severin* doctrine and waiver.  Although the claim is not barred by *res judicata* or the law of the case doctrine, leave to amend to add this claim is denied as futile.

17

## 1.   *Res Judicata* **and the Law of the Case Doctrine**

Defendants assert that Five Star's claim for breach of implied covenant of good faith and fair dealing is merely an "attempt to replead the delay claim," which was already dismissed by this court and the Second Circuit.  Def. Mem. at 6–7.  In particular, Defendants rely on the "express[] holding that Five Star's 'delay claims' were barred by the Subcontract's 'no-damages-for-delay clause.'"  *Id.* (citing *Five Star*, 758 F. App'x at 100–01).

As previously determined, the law of the case doctrine, rather than *res judicata*, applies to a case in this posture.  A guiding principle of the doctrine is that it "comes into play only with respect to issues previously determined."  *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895)).  This principle has been interpreted to stand for the proposition that courts are "not require[d] to re-answer questions already settled by the analysis contained in earlier opinions just because the question is framed differently."  *Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14-CV-7128 (KMK), 2016 WL 4449660, at *7 (S.D.N.Y. Aug. 23, 2016).  In *Masciotta,* for example, the court relied on the law of the case doctrine in declining to grant a plaintiff leave to replead a claim for violations under the Fourth Amendment where the court had previously determined that she had failed to state a claim and the proposed amended complaint merely stated the same claim under a different theory.  *Id.* at *5–7.  In that case, the court upheld its previous determination that defendants were entitled to qualified immunity, even where a plaintiff alleged different

18

motivations for the search that gave rise to the claim, because the analysis used to reach the conclusion was the same. *Id.*

Other courts, however, have made clear that the law of the case doctrine bars only specific legal claims based on the same "nucleus of facts" as questions decided at an earlier point in the litigation. *See Tomasino,* 2015 WL 1470177, at *2 ("As compared to claim preclusion, it is not enough [under the law of the case doctrine] that the matter could have been decided in earlier proceedings.") (citing 18B Wright et al., *supra,* § 4478 at 649). In *Tomasino,* the court determined that the law of the case doctrine did not bar a breach of contract claim that was premised upon the same facts as dismissed claims for breach of warranty or unjust enrichment. *Id.* Therefore, the jurisprudence regarding the law of the case doctrine in this Circuit establishes that a subsequent attempt to replead the same legal claim under the same or similar facts would be precluded by the law of the case doctrine, whereas a proposed legally-distinct claim would not be barred, even if it arises from the same facts as the earlier claim.

Here, while the SAC's third claim arises out of the same set of circumstances as Five Star's earlier breach of contract claim (*i.e.,* breach of contract based on delays and inefficiencies), the proposed claim offers a distinct legal theory (namely, that Cauldwell breached the implied covenant of good faith and fair dealing) based on an additional set of facts (Cauldwell's alleged refusal to negotiate a liquidating agreement in good faith). Although the Second Circuit already determined that Five Star is not entitled to breach of contract damages for claims falling under the

no-damages-for-delay clause, the claim for breach of covenant of good faith and fair dealing has not previously been adjudicated, and so it is not barred on preclusion grounds or by the law of the case doctrine.

### 2.   The *Severin* Doctrine and Waiver

Under the *Severin* doctrine, Cauldwell could only have recovered from GSA for Five Star if it could demonstrate liability to Five Star. *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 717 F. Supp. 1021, 1024 (S.D.N.Y. 1989) (citing *Severin v. United States*, 99 Ct. Cl. 435 (1943) (where subcontract provided general contractor could not be held liable for loss or damage caused by owner, general contractor could not sue owner on subcontractor's behalf)). As Defendants correctly set out in their opposition papers, the process by which a contractor "sponsors" a subcontractor's claim "benefits the government and the subcontractor" by simplifying and streamlining claims against the government and "help[ing to] suppress frivolous claims." Def. Mem. at 8 (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed. Cir. 1983)). In New York, courts "consistently" allow for a subcontractor to recover from an owner when that subcontractor enters into a liquidating agreement with the general contractor. SAC ¶ 69.

Five Star argues that the covenant of good faith and fair dealing "in this context requires the general contractor to 'take all reasonable steps so that the subcontractor's right to an eventual recovery, if any, from the owner will be protected.'" Pl. Mem. at 12 (citing *RAD & D'Aprile, Inc. v. Arnell Constr. Corp.,* 74 N.Y.S.3d 266, 268–69 (2d Dep't 2018) ("*D'Aprile*")). As Defendants correctly note, however, the "context" to which the court was referring in *D'Aprile* was one in which

20

the parties had, in fact, signed a liquidating agreement.  Def. Mem. at 11 (citing *D'Aprile*, 74 N.Y.S.3d at 269) ("[T]he complaint's allegations, together with the additional evidence . . . were sufficient to show that the parties entered into a liquidating agreement independent of the subcontract on which the plaintiff could premise its cause of action for breach of the duty of good faith and fair dealing."). No such agreement exists in this case, which makes *D'Aprile* distinguishable.  SAC ¶ 74.

Apart from *D'Aprile*, Five Star offers no support for the suggestion that the implied duty of good faith and fair dealing required Cauldwell to take positive steps to recoup GSA monies owed to Five Star.  Generally, "[t]o prove breach of the implied covenant of good faith and fair dealing, the plaintiff must establish that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'" *TIG Ins. Co. v. Newmont Min. Corp.*, 413 F. Supp. 2d 273, 281 (S.D.N.Y. 2005) (quoting *Dweck Law Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (internal quotations omitted), *aff'd*, 226 F. App'x 49 (2d Cir. 2007)). Five Star does not allege that Cauldwell refused to consider the possibility of a liquidating agreement, but rather that it proposed a liquidating agreement with terms that Five Star found objectionable.  SAC ¶¶ 72–74.  For that reason, Five Star ultimately rejected the proposal.

Notwithstanding Five Star's objections to the proposal, an essential element of a liquidating agreement is the "liquidation of liability in the amount of the general contractor's recovery against the owner." *D'Aprile*, 74 N.Y.S.3d at 269;

*Bovis Lend Lease LMB Inc. v. GCT Venture, Inc.*, 728 N.Y.S.2d 25, 27 (1st Dep't 2001)).  *See also* Henry R. Kates, *Note: Facilitating Subcontractors' Claims Against the Government Through the Prime Contractor as the Real Party In Interest,* 52 Geo. Wash. L. Rev. 146, 154 (1983) ("These agreements, which facilitate prosecution of subcontractors' claims, usually provide that the subcontractor will release all claims it may have against the prime contractor in exchange for the prime contractor's promise to pursue these claims against the owner or government.").  Neither the inability of the two parties to agree to a liquidating agreement nor Cauldwell's condition that all claims against it be included in the liquidating agreement are sufficient to support a cognizable claim of bad faith, particularly as "under a liquidation agreement, the subcontractor releases *all claims* it may have against the contractor in exchange for the contractor's promise to pursue those claims against the owner and remit any recovery to the subcontractor."  *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 610 (Tex. 2004) (citing Kates, *supra* at 154) (emphasis added).  Therefore, absent a liquidating agreement or another contractual commitment that Cauldwell be held liable to Five Star, the SAC does not include sufficient facts to state a claim establishing Cauldwell's liability.  *See, e.g., Barry, Bette & Led Duke Inc. v. State,* 669 N.Y.S.2d 741, 743 (3d Dep't 1998) (In New York, "there will be no liability in the general contractor absent an actual contractual commitment to that effect.").

The fact that the claim for breach of implied covenant of good faith and fair dealing is premised upon the same facts that underlie Five Star's dismissed claim

for damages based on delays and inefficiencies further weakens the plausibility of the claim.  In its breach of implied covenant of good faith and fear dealing claim, Five Star explains that it initially sought to recover $5,521,760.15 from Cauldwell for the "extended general conditions" that it incurred as a result of the "delays and inefficiencies not caused by Five Star."  SAC ¶¶ 43–45.  These costs are therefore precisely those covered under the no-damages-for-delay clause in the subcontract for which Cauldwell was previously found not to be liable.  *Five Star,* 758 F. App'x at 100.  When Cauldwell "refused to pay" for these costs, SAC ¶ 45, Five Star's only remedy was to seek to persuade Cauldwell to enter into a liquidating agreement under which Cauldwell would promise to pursue Five Star's claims against GSA and remit recovery to Five Star.

However, any claim based on an implied duty of good faith and fair dealing must be based on the terms of the agreement itself, and cannot be used to circumvent the parties' express agreement or the "spirit" of their agreement.  *See, e.g., Capital Z Fin. Serv. Fund II, L.P. v. Health Net, Inc.*, 840 N.Y.S.2d 16, 24 (1st Dep't 2007).  Moreover, "an independent cause of action for breach of the implied covenant cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of contract."  *Century-Maxim Const. Corp. v. One Bryant Park, LLC*, 886 N.Y.S.2d 70, at *24 (West. Cty. Sup. Ct. 2009) (citing *The Hawthorne Group, LLC v. RRE Ventures*, 776 N.Y.S.2d 273, 275–76 (1st Dep't 2004)).  Generally, a claim for breach of implied covenant of good faith and fair dealing is "properly dismissed [when] it [is] merely a substitute for a nonviable

23

breach of contract claim." *Triton Partners LLC v. Prudential Sec. Inc.*, 752 N.Y.S.2d 870, 870 (1st Dep't 2003) (citing *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983)).

Because it is pursuing damages in the form of general extended costs that were previously the subject of its breach of contract claim due to delays and inefficiencies, Five Star essentially seeks to hold Cauldwell liable for damages that were expressly waived in the parties' contract. SAC ¶ 42; *Five Star,* 758 F. App'x at 100. While the no-damages-for-delay clause will not bar collection of damages upon a finding of bad faith or malicious conduct, *see, e.g. Clifford R. Gray Inc. v. City Sch. Dist. of Albany,* 716 N.Y.S.2d 795, 797 (3d Dep't 2000), the SAC does not present facts sufficient to allege bad faith on the part of Cauldwell. Rather, the claim as alleged in the SAC demonstrates only that, in exchange for assuming liability to Five Star for damages owed to Five Star by GSA, Cauldwell proposed terms in the liquidating agreement to which Five Star did not agree. Five Star's attempt to now hold Cauldwell liable for those damages seeks to circumvent the spirit of the no-damages-for-delay clause, and is thus impermissible. In sum, Five Star has failed to state a claim for breach of implied covenant of good faith and fair dealing, and granting leave to add this claim would be futile.[7]

---

[7] Cauldwell argues that, even if Five Star had signed the liquidating agreement, GSA probably would have rejected Five Star's claims as abandoned, as each amended complaint after the first amended complaint has eliminated claims of GSA liability. Def. Mem. at 11–12 (citing *Austin v. Ford Models*, 149 F.3d 148, 155 (1998) ("[I]t makes perfect sense to hold that a party who seeks to file an amended pleading that omits a claim intends to abandon the claim, irrespective of whether the amended pleading is permitted by the court.")). The Court need not resolve

### E.  Payment Bond

Finally, Five Star alleges that both Defendants are jointly and severally liable for the sum of $10,019,414.35, together with prejudgment interest, in connection with payment bond no. 015-028-808, issued by Liberty to Cauldwell, and delivered to GSA.  *Id.* ¶¶ 81–86.  Defendants argue that the Second Circuit has already dismissed with prejudice Five Star's Miller Act claims, other than for $677,158.05.  Def. Mem. at 12.  Therefore, this claim, which is "merely [an] aggregate[] of [Five Star's] first three claims for relief," should be dismissed, as well. *Id.*

To establish a claim under the Miller Act, a plaintiff must "plead that: (1) it provided labor or materials in performing work provided for in a contract for which payment bond is furnished and (2) it has not been paid in full for the work performed."  *Trustees of Bricklayers & Allied Craftworkers, Local 5 New York Ret., Welfare, Labor Mgmt. Coal. v. Preferred Masonry Restoration, Inc.*, No. 17-CV-3662 (KMK), 2019 WL 4688601, at *5 (S.D.N.Y. Sept. 25, 2019) (quoting *M.E.S., Inc. v. Safeco Ins. Co. of Am.*, No. 10-CV-2798 (VMS), 2014 WL 2931398, at *4 (E.D.N.Y. June 27, 2014) (quotation marks omitted)).  By virtue of the Court's rejection of all proposed new claims in the SAC, granting leave to amend the payment bond claim would be futile.

---

whether Five Star has abandoned claims of GSA liability in light of the determination that the covenant of good faith and fair dealing did not require Cauldwell to litigate Five Star's claim for extended general conditions costs with the GSA.

### F.  The Request that the Court Impose Rule 11 Sanctions *Sua Sponte* Is Denied Without Prejudice

In their opposition papers, Defendants make a perfunctory request that the Court consider, *sua sponte,* imposing Rule 11 sanctions upon Five Star for their "abusive litigation" tactics, including their "assertion of implausible and meritless claims."  Def. Mem. at 12–13.  Rather than briefing a formal motion for sanctions, Defendants state that they have "not sought sanctions, pursuant to Fed. R. Civ. P. Rule 11 or 29 U.S.C. 1927, hoping to avoid the need for a 'trial within a trial' and further burden on this Court."  *Id.* at 12.

In support of their request, Defendants cite only two cases, both of which are inapposite.  In the first case, *Cooter & Gell v. Harmarx Corp.*, 496 U.S. 384 (1990) the Supreme Court concluded that a petitioner's voluntary dismissal of a case did not divest a district court of its ability to consider a Rule 11 motion for sanctions. The district court's imposition of sanctions was upheld where the allegations in the complaint were found to be "completely baseless" with respect to an antitrust claim for which a petitioner had not engaged in any meaningful research.  *Cooter & Gell*, 496 U.S. at 390.  In the second case, a court in this District considered whether sanctions were appropriate where a plaintiff brought claims barred under *res judicata* following the *sua sponte* dismissal of the claim in an overlapping lawsuit. *Soling v. New York State*, 804 F. Supp. 532, 538–39 (S.D.N.Y. 1992).  The court in *Soling* ultimately found that sanctions were inappropriate, "unless further overlapping lawsuits [we]re filed," as it concluded that the plaintiff had not made

26

any baseless factual allegations. *Id.* Thus, the authority provided by Defendants does not support the Court's imposition of sanctions here.

As opposed to a formal motion for sanctions, *sua sponte* sanctions are imposed "without affording the offender the opportunity to withdraw the challenged document" and "should issue only upon a finding of subjective bad faith." *Rankin v. City of Niagara Falls, Dep't of Pub. Works*, 569 F. App'x 25, 26 (2d Cir. 2014) (citing *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir.2013) (internal citations omitted)). In the Second Circuit, the bad faith requirement may be met by demonstrating "deliberate fraud or wrongdoing" or "direct or circumstantial evidence that counsel knew that the argument was without merit." *SEC v. Smith*, 798 F. Supp. 2d 412, 424 (N.D.N.Y. 2011), *aff'd in part, dismissed in part on other grounds*, 710 F.3d 87 (2d Cir. 2013); *In re Gushlak*, No. 11-MC-218 (NGG), 2012 WL 2564523, at *2 (E.D.N.Y. July 2, 2012).

The Court is sympathetic to Defendants' frustration with the protracted history of this case, which has been stalled at the pleading stage for almost five years. Nevertheless, the current record is insufficient to support a finding that Five Star has acted in bad faith. Accordingly, the Court will not *sua sponte* impose sanctions, but the application is denied without prejudice to renewal at a later stage in the litigation if supported by a more complete record.

## III. CONCLUSION

For the foregoing reasons, Five Star's motion for leave to serve a second amended complaint is denied. The Clerk of the Court is respectfully directed to

close Docket Number 111 and mark it as denied.  The Court will hold a case

management conference on **June 25, 2020 at 11:00 a.m.** by telephone to set a

discovery schedule in this case.[8]

      **SO ORDERED.**

Dated:  May 19, 2020
      New York, New York

                                        _____
                                        JAMES L. COTT
                                        United States Magistrate Judge

---

[8] The Court will separately issue a Rule 16 Order setting forth the requirements for
a case management plan.