UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA for the use
and benefit of FIVE STAR ELECTRIC
CORP.,

       Plaintiff,

  -v-                                       No. 15 CV 4961-LTS-JLC

LIBERTY MUTUAL INSURANCE CO. and
CAULDWELL-WINGATE CO., LLC,

       Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

       Plaintiff Five Star Electric Corporation ("Plaintiff" or "Five Star"), a subcontractor of Defendant Cauldwell-Wingate Company LLC ("Defendant" or "CWC"), for a construction project at the Thurgood Marshall United States Courthouse in Manhattan, commenced this suit against CWC and Liberty Mutual Insurance Company (collectively, the "Defendants") under the Miller Act, 40 U.S.C. § 3131, and for breach of contract and unjust enrichment. (<u>See</u> docket entry no. 91.) The Court has subject matter jurisdiction of the Miller Act claim pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction of the state-law claims pursuant to 28 U.S.C. § 1367.

       On May 19, 2020, Magistrate Judge James Cott denied Plaintiff leave to file a second amended complaint against the Defendants. (<u>See</u> docket entry no. 119, the "May 19 Order".) On August 6, 2020, Plaintiff filed a motion seeking leave to file late objections pursuant to Federal Rule of Civil Procedure 6(b) and objecting to the May 19 Order pursuant to Federal Rule of Civil Procedure 72 to the extent the May 19 Order denies Plaintiff leave to

include in its second amended complaint a claim for breach of the implied covenant of good faith and fair dealing. (See docket entry no. 124, the "Motion".) Defendants filed an opposition to the Motion on August 20, 2020, and Plaintiff filed a reply on August 27, 2020. (See docket entry nos. 126 and 129.)

For the reasons explained below, Plaintiff's motion is denied as untimely.

## BACKGROUND

The factual background and procedural history in this case are set out more fully in the Court's Orders dated November 1, 2016, August 28, 2017, and April 19, 2018, the December 18, 2018, summary order issued by the United States Court of Appeals for the Second Circuit, and the May 19 Order issued by Judge Cott. (See docket entry nos. 57, 68, 75, 77, and 119.) The Court assumes the parties' familiarity with those decisions. The following facts are pertinent to the instant Motion.

In 2009, CWC as general contractor subcontracted with Plaintiff for a construction project at the Thurgood Marshall United States Courthouse in Manhattan. (See docket entry no. 112-A, Plaintiff's Proposed Second Amended Complaint (the "SAC") at ¶¶ 1, 7-8). In connection with this project, Defendant Liberty Mutual Insurance Company issued a payment bond to the General Services Administration ("GSA") on behalf of CWC. (Id. at ¶ 81.) This litigation, concerning payments for additional work, was commenced in 2015 with Plaintiff's filing of its original complaint asserting claims against the Defendants based on the Miller Act, breach of contract and quantum meruit. (See docket entry no. 8.) On November 1, 2016, the Court granted Defendants' motion to dismiss the complaint but permitted Plaintiff to move for leave to amend its complaint. (See docket entry no. 57.) Plaintiff moved for leave to file its amended complaint in January 2017. (See docket entry no. 63.) In August 2017, the

Court denied Plaintiff's motion as futile, and subsequently denied Plaintiff's motion for reconsideration in April 2018. (See docket entry nos. 68, 75.) In December 2018, upon Plaintiff's appeal to the Second Circuit, the Court of Appeals vacated the Court's holding that Five Star failed plausibly to allege a breach of contract claim as to certain outstanding payments, affirmed the denial of leave to amend as to all other claims, and remanded for further proceedings. (See docket entry no. 77.) Upon remand, Plaintiff was granted leave to file an amended complaint to allege a breach of contract claim as to the payments specified by the Second Circuit, which it did on April 23, 2019. (See docket entry nos. 80, 94.) On September 13, 2019, Plaintiff moved for leave to serve a second amended complaint in which it seeks to assert a claim for breach of the implied covenant of good faith and fair dealing, alleging, inter alia, that CWC "refused" to negotiate an agreement in good faith that would have entitled Five Star to recover additional balances allegedly owed to it by GSA. (SAC at ¶¶ 70-79.)[1]

In the May 19 Order, Judge Cott found, inter alia, that Plaintiff's proposed claim for breach of the implied covenant of good faith and fair dealing was futile because it failed to state a claim upon which relief could be granted. (See May 19 Order at pgs. 20-24.) Pursuant to Fed. R. Civ. P. 72, Five Star was required to file any objections to the May 19 Order within 14 days after the decision, specifically by June 2, 2020. (See docket entry no. 128 at ¶ 5.)

On June 25, 2020, Judge Cott conducted an initial case management teleconference (the "June Conference") during which Five Star's counsel stated that "Five Star had not yet decided whether to file objections to Judge Cott's Order, proceed with the litigation

---

[1] The Court has referred this matter to Judge Cott for general pretrial management, thereby authorizing Judge Cott "to decide plaintiff's [motion for leave] to amend pursuant to 28 U.S.C. § 636(b)(1)(A)." Corrado v. N.Y. State Unified Court. Sys., No. 12-cv-1748 (DLI)(MDG), 2014 WL 4626234, at *1, n. 1 (E.D.N.Y. Sept. 15, 2014) (collecting cases).

and raise its arguments in the appeal from the final determination or seek to negotiate a settlement with Defendants." (See docket entry no. 125, Declaration of David Rosenberg in Opposition to Plaintiff's Motion to Permit Late Filing of Fed. R. Civ. P. 72 Objections (the "Opp. Dec."), at ¶ 19.) In response, Judge Cott stated that any such objections would appear to be untimely and to have been waived pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636, but he agreed to hold discovery in abeyance until July 10, 2020, while the parties engaged in settlement negotiations. (See Opp. Dec. at ¶ 20 and Ex. E, July 29, 2020 E-mail from David Rosenberg to Andrew Richards ("As explained by Judge Cott in our June 25, 2020 Initial Case Management Conference call and as governed by the Federal Rules of Civil Procedure, the deadlines for asserting any form of challenge of, or appeal from, Judge Cott's May 19, 2020[,] Opinion and Order has long since passed."); docket entry no. 122.) During the June Conference, Judge Cott set July 24, 2020, as the deadline for document requests and initial interrogatories. (Docket entry no. 122.)

By e-mail dated July 28, 2020, CWC's counsel, David Rosenberg, requested Five Star's counsel, Andrew Richards, provide confirmation of receipt of CWC's document requests and initial interrogatories and confirmation that Five Star had not yet served its discovery demands pursuant to the schedule established by Judge Cott. (See Opp. Dec. at Ex. C.) In the same e-mail, Mr. Rosenberg reiterated CWC's interest in settling the claims and counterclaims asserted in the case. (Id.) In his July 28, 2020, response, Mr. Richards stated that Five Star planned to serve CWC with its discovery demands the following day because Five Star was "preparing objections to the [May 19 Order] and [Mr. Richards] couldn't finish [the discovery demands] by [the] Friday [July 24 deadline imposed by Judge Cott.]" (See Id. at Ex. D.) Mr. Rosenberg in turn responded that Five Star had missed both the July 24, 2020, deadline set by

Judge Cott for the service of discovery requests, and the deadline established by the Federal Rules of Civil Procedure for filing objections to Judge Cott's order, which Judge Cott had explained during the parties' June Conference.  (See Id. at Ex. E.)  Mr. Rosenberg also stated that he could not advise his clients to consent to late filing of Five Star's Objections.  (Id.)  Mr. Richards replied that Five Star "was preparing a motion for leave to submit late objections. I am not asking you to consent to an extension to serve objections. The motion should be filed by Friday."  (Id.)  On August 6, 2020, Five Star filed its motion to file late objections to the May 19 Order, without first seeking consent from CWC or leave from the Court.

## Discussion

Plaintiff argues that it should be permitted to file late objections to the May 19 Order because its delay is justified under the "excusable neglect" doctrine set forth in Fed. R. Civ. P. 6(b).  Where a party seeks an extension of the time to object to a magistrate judge's decision until after the deadline to object has passed, "the movant is required to show that the failure to act was the result of excusable neglect." Wesolek v. Canadaair, Ltd, 838 F.2d 55, 58 (2d Cir. 1988) (internal quotation marks omitted) (citing Fed. R. Civ. P. 6(b)).  "The Supreme Court in Pioneer explained that the term 'neglect,' for purposes of interpreting 'excusable neglect' in the federal rules, has its normal, expected meaning: inadvertence, carelessness, and mistake." Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997) (citing Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 388 (1993)).  In Pioneer, the Supreme Court explained that, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."

Pioneer, 507 U.S. at 392 (footnotes omitted). The Supreme Court concluded that the determination should be "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 395.

In assessing excusable neglect under Fed. R. Civ. P. 6(b), courts consider the following four Pioneer factors: "'[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" Silivanch v. Celebrity Cruises, Inc., 333 F.3d at 366 (2d Cir. 2003) (quoting Pioneer, 507 U.S. at 395). Typically, the first two factors and the final factor will favor the moving party, because delays are generally minimal, prejudice to the non-movant is often negligible, and the absence of good faith is rarely at issue. Id. at 366. "But despite the flexibility of 'excusable neglect' and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, [the Second Circuit] and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" Id. Indeed, the Second Circuit has found that "a late filing will ordinarily not be excused by negligence," and "a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test[,]" particularly where the pertinent rule is unambiguous. Canfield, 127 F.3d at 250-251 (internal quotation marks and citation omitted) (holding not clearly erroneous the district court's decision that a lawyer's failure to file motion papers within the time limit established by a local rule was not excusable neglect under Rule 60(b) where the language of the pertinent rule was unambiguous and opposing counsel put the lawyer on notice of the rule's requirements); see also Silivanch, 333 F.3d at 366 (noting that "the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court

rule[.]'"); Hanks v. Voya Ret. Ins. & Annuity Co., No. 16-CV-6399 (PKC), 2020 WL 6538743, at *2 (S.D.N.Y. Nov. 6, 2020) ("When a movant's failure to meet a clear deadline was within his control, the motion will be denied, even in instances of good-faith ignorance of a rule" and "even if all other factors tip in the movant's favor.")

  Here, Plaintiff argues that all four of the Pioneer factors establish excusable neglect, and that the Court should therefore excuse its late filing of objections to the May 19 Order. As a threshold matter, Plaintiff submits that its delay in filing the objections constitutes neglect, as opposed to a deliberate decision to miss the filing deadline, because it was a result of miscommunication between Five Star and its counsel, Mr. Richards. Mr Richards represents that:

> Within a few days of receiving the Order, I spoke with Five Star's general counsel, Robert Saville, Esq., to determine whether Five Star wanted to pursue an appeal from the Order or settle the action. It was my understanding from that conversation that Five Star would not pursue any further appeal from the Order and that Mr. Saville would get authority from Five Star's parent company for a possible settlement. Based on my understanding I did not focus on the fact that Five Star had 14 days after the Order was filed to file the Objections in order to preserve Five Star's right to appeal from the Order to the Second Circuit Court of Appeals after the entire action was concluded. My misunderstanding resulted in Five Star not filing its Objections to the Order within the time prescribed by F.R.C.P. Rule 72.

(See docket entry no. 123-1, Declaration of Andrew Richards ("Richards Decl.") at ¶ 4.) Absent extraordinary circumstances, counsel's mere miscommunication with its client regarding the client's intentions to pursue objections or preserve its right to appeal is not sufficient to establish excusable neglect. See, e.g., Esteves v. Bondy, 189 F.R.D. 148, 149 (E.D. Pa. 1999) (finding no excusable neglect under Fed. R. Civ. P. 6(b) where the reason for Plaintiff's failure to file a timely demand for a trial de novo was "'solely due to counsel's understanding that Plaintiff would accept the arbitration award'. . . Counsel and Plaintiff had a responsibility to fully discuss

and evaluate the option of appeal prior to the [filing deadline.]") (emphasis in original). The record reflects that counsel took no steps to obtain the option to file a late appeal until the instant motion was filed weeks after the deadline had passed nor even, it appears, to verify that the client had definitively decided not to appeal, notwithstanding Judge Cott's statement at the June Conference that the deadline had passed. Indeed, "[t]he case law from the Second Circuit is consistent in holding that mere attorney error or omission is insufficient to establish 'excusable neglect', particularly where the attorney is aware of the entry of the order [to be appealed] in time to file a notice of appeal in a timely fashion." In re Mowers, 160 B.R. 720, 725 (Bankr. N.D.N.Y. 1993) (citations omitted) (holding that attorney's failure to notify debtor of and failure to discuss possibility of appeal from the order prior to expiration of the appeal period did not establish the excusable neglect required to permit untimely notice of appeal in bankruptcy court.) Furthermore, it appears from Five Star's own submission on this motion practice that there had been a decision not to pursue an appeal, and that this motion was the product of a change in strategy. See Richards Decl. at ¶ 6 ("It was determined recently that Five Star wanted to preserve its claim for breach of implied covenant of good faith and fair dealing because Five Star believes that it is a good and viable claim. We prepared the instant motion after that decision was made.").

With regard to the first and second Pioneer factors, Five Star argues that, because the length of the delay was only a few weeks and there was little activity between the May 19 Order and Five Star's filing of its objections, CWC has not been prejudiced and the delay hardly affected the parties' litigation. Five Star does not submit that the delay was beyond its reasonable control, argue that the rule imposing the deadline was ambiguous, or identify any other "extraordinary circumstances" which would justify its failure to meet the deadline.

Moreover, Five Star ignores the fact that, although discovery had not significantly progressed between the issuance of the May 19 Order and its filing of the late objections, its delay nevertheless has prejudiced CWC and its counsel; after the issuance of the May 19 Order and before Five Star filed the instant motion, CWC had to prepare for a settlement conference with Judge Cott, attempted to engage Five Star in settlement negotiations, worked to prepare timely discovery demands and interrogatories in accordance with Judge Cott's July 24, 2020, deadline, and then unexpectedly had to gather its resources to oppose the instant Motion on a delayed timeline despite objecting to the filing of Five Star's objections. See Opp. Dec. at Exs. A-E. These circumstances, in conjunction with the length of this litigation, which has been ongoing since 2015, and the Plaintiff's repeated failures to assert meritorious claims, clearly prejudice the Defendants.

Regarding the third Pioneer factor, Five Star vaguely argues that its delay is excusable because the communication between counsel and his client was partially a result of the unusual circumstances caused by the COVID-19 pandemic, and would not have happened otherwise. However, other than general statements about "working from home under stressful circumstances[,]" "dealing with numerous office issues on a daily basis in addition to my own workload[,]" and "personal issues concerning my three children[,]" Plaintiff's counsel does not provide any clear reason as to why the pandemic inhibited his ability to communicate clearly with his client, his ability to seek leave from the Court for filing late objections after the deadline had passed, or, given that Judge Cott made him aware of the missed deadline during the parties' June Conference, was the reason for Five Star's ultimate filing of the objections 67 days after the June 2, 2020, deadline had passed. See Richards Decl. at ¶ 5.

Plaintiff also argues that the fourth Pioneer factor, which examines the existence of good faith on the part of the movant, weighs in its favor because it was never Five Star's intention to forgo its right to object to the May 19 Order, and counsel's inadvertence was truly a result of miscommunication. Plaintiff's argument is belied by the record before this Court, which demonstrates that Five Star's delay was, at best, a result of its indecisiveness as to whether it should file its objections up until approximately a week before filing the instant Motion. Plaintiff's counsel raised its possible intention to file objections for the first time at the June Conference and was unambiguously informed by Judge Cott during the conference that any filing of objections at that point would be considered untimely. At that point, when Plaintiff was clearly considering filing objections, Plaintiff did not seek consent from CWC or leave of court to file the objections it was potentially anticipating. Plaintiff thereafter failed to comply with the July 24, 2020, discovery deadline set by Judge Cott, again without seeking consent from CWC or an extension from Judge Cott.

It was not until July 28, 2020, over a month after the June Conference, that Plaintiff communicated its intention to file objections to the May 19 Order in an e-mail to CWC, also announcing the following day that it did not intend to seek CWC's consent to the late filing. See Opp. Dec. at Exs. D-E. Five Star's email correspondence is not only violative of the undersigned's Individual Rule of Practice A(2)(b), which requires parties to use their best efforts to resolve informally the matters in controversy before making a motion of any type, but also puts the lie to Five Star's own certification in its notice of motion that "Plaintiff has used its best efforts to resolve informally whether Defendant would consent to the filing of late objections to the Order." (See docket entry no. 123.)

Five Star's inconsistent statements and false certification on the record, repeated disregard of court rules and deadlines, and refusal to seek leave for extensions promptly upon learning of potential and anticipated delays undermines any proper basis for a finding of excusable neglect. For these reasons, the Court concludes that Plaintiff has not established excusable neglect under Fed. R. Civ. P. 6(b), and the instant Motion is denied in its entirety as untimely. As a result, the Court need not address the merits of Plaintiff's objections to the May 19 Order.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion pursuant to Fed. R. Civ. P. 6(b) to permit late filing of objections is denied.

This Memorandum Order resolves docket entry no. 123. This case remains referred to Judge Cott for general pretrial management.

SO ORDERED.

Dated: New York, New York
May 13, 2021

      /s/ Laura Taylor Swain
     LAURA TAYLOR SWAIN
     Chief United States District Judge